OPINION. Black, Judge: There are two issues in this proceeding involving the estate tax. The major question concerns whether a contingent remainder to charity is deductible under section 812 (d) of the Code and, if so, the amount of the deduction. The other issue is whether brokerage and legal fees incurred in connection with the sale of realty are deductible administrative expenses under section 812 (b) (2). Issue 1. The applicable statute to Issue 1 is printed in the margin.[1] In the instant case there is no issue between the parties that the charities to which the contingent bequests were made are of the class named in section 812 (d) of the Code. The only reason that respondent has denied the deduction which petitioner claims for these contingent charitable bequests is that he contends that the present value of decedent’s contingent bequests to charity is too speculative and tenuous to be deductible. In support of this contention, respondent relies upon the Supreme Court’s decisions in Humes v. United States, 276 U. S. 487, and Robinette v. Helvering, 318 U. S. 184. Petitioner, on the other hand, contends that it has made clear and convincing proof that actuarial computations can and have been made of the present value of these contingent bequests to charity. Petitioner further contends that such actuarial computations having been made, Estate of Pompeo M. Maresi, 6 T. C. 582, affd. 156 F. 2d 929, is applicable and sustains petitioner. Petitioner points out that in the Maresi case, both the Tax Court and the Second Circuit distinguished Humes v. United States and Robinette v. Helvering, both supra, upon which respondent relies, and petitioner contends that substantially the same distinction as existed in the Maresi case exists here. We agree with petitioner. Petitioner presented reliable and conservative actuarial testimony to estimate the value of the contingent remainder to charity at the date of decedent’s death to support his deduction of $179,154.19. We do not feel that we are at liberty to disregard this testimony of competent actuaries who have made their computations in accordance with what appear to be well recognized actuarial methods. In Estate of Pompeo M. Maresi, supra, we held that the commuted value of the liability of decedent’s estate for payments to decedent’s wife until she should die or remarry were deductible from decedent’s gross estate in an amount determinable by reference to American Experience Tables reflecting life expectancy and the probability of the remarriage of widows. In that case, among other things, we said: And, of course, it can not be said here as in the Robinette case that petitioner has referred us to no method for determining the value of the interest in question. Although it is true that a marriage table was offered in the Humes case, it appeared to relate solely to experience among women in the Scotch peerage, while the table proffered here is based upon American statistics. Following the principle which we announced in the Maresi case, supra, and which was affirmed by the Second Circuit, we hold in petitioner’s favor on Issue 1. In the first computation made by petitioner’s actuary he determined that the present value of the charitable remainder under the will of the decedent at date of death was $.24094 per dollar represented in the one-half of the estate which may go to charity. In a supplemental valuation based upon the effect upon the remainder value of the contin’gency of illegitimate issue the actuary reaches a slightly lower figure. In this supplemental computation the actuary reaches the conclusion that the net result is that the increased probability of issue reduces the value per dollar of remainder to charity from $.24094 to $.24058. This supplemental actuarial computation concludes with this statement: “It is our opinion that the figure of $.24058 does make full provision for the probability of issue, whether or not legitimate.” In a recomputation under Rule 50 of the deduction for charitable bequests this figure of $.24058 should be used instead of the figure $.24094. Issue 2. The second question is whether petitioner is entitled to a deduction of $2,750 brokerage commissions and $565.50 legal expenses for the sale of decedent’s residence in Scarsdale, New York, as administration expenses. Respondent contends the deduction should be disallowed on the ground that the sale was not part of the administration of the estate but was an expense of the trust. Under the decedent’s will his wife and daughter were allowed to occupy the residence, but they chose to live elsewhere and the property was sold. The proceeds of the sale were not needed to pay debts or expenses and consequently became part of the trust created by the residuary clause of the will. Although both the trustee and executor had the power to sell the property, the controlling fact is that the executor actually sold the real estate in the will and the proceeds subsequently became part of the residue under the will. The expenses of the sale were properly allowed as administration expenses under New York law. In re Siegel's Will, 191 Misc. 323, 78 N. Y. S. 2d 790; In re Shield's Estate, 68 Misc. 264, 124 N. Y. S. 1003; In re De Martini's Will, 81 N. Y. S. 2d 562. Section 812 (b) of the Code allows deductions from gross estate “for administration expenses * * * as are allowed by the laws of the jurisdiction, whether within, or without the United States, under which the estate is being administered.” See Adams v. Commissioner, 110 F. 2d 578, 584. Since these expenses were administration expenses allowed by the laws of New York where the estate is being administered, the deduction is allowed. Decision will Toe entered imder Rule 50. INTERNAL REVENUE CODE. SEC. 812. NET ESTATE. For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate— ****••• (d) Transfers for Public, Charitable, and Religious Uses. — The amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer,, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return or, in the case of a decedent dying on or before October 21, 1942, if the disclaimer is made prior to September 1, 1944), to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * *